CHARLES E. GARCELON, and another,

*vs.*

GEORGE H. TIBBETTS, Appellant.

Androscoggin.    Opinion December 22, 1891.

*Broker. Commissions. Contract. Deed. R. S., c. 73, § 14.*

To entitle a broker to commissions, where he is employed to sell real estate, he must produce a purchaser ready and willing to enter into a contract on the employer's terms.

This implies and involves the agreement of buyer and seller, the meeting of their minds, produced by the agency of the broker.

The defendant was the owner of a parcel of real estate which he authorized the plaintiff to sell for a certain sum. Nothing was said relative to the kind of deed to be given. The broker found a purchaser who refused to complete the transfer unless the defendant would give him a warranty deed, notwithstanding the defendant had a good title to the property. The defendant would not give a warranty deed, but offered to give a quitclaim deed, in usual form with special covenants and so the sale was not executed. *Held :* That the broker was not entitled to his commissions.

ON EXCEPTIONS.

The court ruled as matter of law that the plaintiff upon the facts, as stated in the opinion, was entitled to recover, and the defendant excepted.

*Tascus Atwood*, for plaintiffs.

When one employs another to act for him, the employee has a right to assume (in the absence of restrictions to the contrary)

that the business is to be executed in the way and manner such business is usually and ordinarily conducted. The defendant took this method at the last moment to avoid the sale, for, had he been so particular to execute nothing but a quitclaim deed it would have been in his mind so prominently that he would have named it to his agents.

There are many decisions to the effect that when a sale fails of consummation solely through the seller's fault the broker who has "worked up" the negotiations is entitled to his fee. Story on Agency, § 329.

It does not appear that the purchaser knew at the interview that the defendant's title was good,— a man is justified in demanding a warranty deed,— it enables one if he has occasion to bring a writ of entry to make out a *prima facie* case by its production, something he cannot do by producing a quitclaim deed. *Rand* v. *Skillin*, 63 Maine, 103.

In *Hoback* v. *Kilgore* (a Virginia case), 21 American Rep. 317 (26 Gratt. 442), the court says, "The court is further of opinion that a vendor of real estate in his own right is bound to convey the same with general warranty unless it be otherwise agreed between the parties."

The ruling was reasonable. It is a just ruling. It is consonant with law and should be sustained.

*Newell and Judkins*, for defendant.

FOSTER, J. Assumpsit, in which the plaintiffs as real estate brokers claim to recover a certain sum as commissions for services in negotiating the sale of a parcel of real estate belonging to the defendant.

Whether they are entitled to recover at all is the only question presented by the exceptions.

The defendant was the owner of a parcel of real estate which he authorized the plaintiffs to sell so as to net him two thousand seven hundred dollars. The plaintiffs obtained a purchaser at the price of two thousand seven hundred and twenty-five dollars. Nothing was said between the plaintiffs and defendant relative to the kind of deed which the defendant was to give the

purchaser. The purchaser met the defendant at the plaintiffs' office to pay the money and receive the transfer. The plaintiffs had made a warranty deed of the property to the purchaser to be executed by the defendant, which the defendant refused to execute, but he did offer to execute and deliver to the purchaser a quitclaim deed in usual form with covenant against any claim or title under him. The purchaser refused to complete the transfer unless the defendant would give him a warranty deed of the property, notwithstanding the defendant had good title to the property in question, and the sale was not executed.

Upon this state of facts we think the plaintiffs are not entitled to recover.

The efforts of the plaintiffs to complete the sale failed, not through any fault of the defendant, but by reason of the purchaser and the defendant not being able to agree in reference to the form of conveyance. The purchaser demanded more than the law exacts where there is no agreement, and no form of conveyance is agreed upon. The title was in the defendant. A deed of release or quitclaim of the usual form would have conveyed the defendant's title and estate as effectually as a deed of warranty, R. S., c. 73, § 14. An agreement or covenant to convey a good title does not necessarily entitle the covenantee to a warranty deed. *Kyle* v. *Kavanagh*, 103 Mass. 356, 359. In this case the contract called for a good title, but was silent as to the kind of deed, and the court held that if the contract was that the plaintiff should give the defendant a good title, "there being no agreement as to the form of the deed then the delivery to the defendant of the deed of quitclaim was a compliance with the contract on the part of the plaintiff." *Gazley* v. *Price*, 16 Johns. 267 ; *Ketchum* v. *Evertson*, 13 Johns. 359 ; *Potter* v. *Tuttle*, 22 Conn. 512.

In the case last cited the court say : "No form of conveyance was agreed upon, and therefore, any deed by force of which a clear title in fee would be vested in the plaintiff, would be a compliance with the agreement, whether a quitclaim or deed with covenants."

There is a well defined distinction between the title to real

property, and the deed by which that title is transferred. The title is the principal thing,—the deed is but the muniment or evidence of the title.

No form of conveyance having been agreed upon, and the defendant, admittedly having a good title to the real estate in question, was in no fault in not completing the sale on his part, when he offered his quitclaim deed with covenants. The purchaser, however, was not satisfied with a deed that would effectually vest in him a good title to the property. He demanded more than a title. He exacted covenants which the defendant was not willing to give. There was therefore no contract, no agreement for a sale. Consequently no commissions for sale of the property are due from the defendant to these plaintiffs.

In *Wylie* v. *Marine National Bank*, 61 N. Y. 416, it was held that to entitle the broker to commissions, he must produce a purchaser ready and willing to enter into a contract on the employer's terms. This implies and involves the agreement of buyer and seller, the meeting of their minds, produced by the agency of the broker.

In *Barnard* v. *Monnot*, 16 How. Pr. (N. Y.) 440, it was said that the duty of the broker consisted in bringing the minds of the vendor and vendee to an agreement.

The Supreme Court of the United States in *McGavock* v. *Woodlief*, 20 How. 221, say that "the broker must complete the sale ; that is, he must find a purchaser in a situation and ready and willing to complete the purchase on the terms agreed on, before he is entitled to his commissions. Then he will be entitled to them, though the vendor refuse to go on and perfect the sale." "But in all the cases, under all and varying forms of expression," say the court in *Sibbald* v. *The Bethlehem Iron Co.* 83 N. Y. 378, 382, "the fundamental and correct doctrine is, that the duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until that is done his right to commissions does not accrue."

It is now the well settled doctrine, that in the absence of any

usage, or contract express or implied, or conduct of the seller preventing a completion of the bargain by the broker, an action by the broker for his commissions will not lie until it is shown that he has effected or procured a sale of the property. It is not enough that the broker has devoted his time, labor or money to the interests of his employer. Unsuccessful efforts, however meritorious, afford no ground of action. Where his acts effect no agreement or contract between his employer and the purchaser, the loss must be his own. He loses his labor and effort which he staked upon success. If no contract, then no reward. His commissions are based upon the contract of sale. *Viaux* v. *Old South Society*, 133 Mass. 1, 10 ; *Loud* v. *Hall*, 106 Mass. 404, 407 ; *Tombs* v. *Alexander*, 101 Mass. 255 ; *Kock* v. *Emmerling*, 22 How. (U. S.) 69 ; *Glentworth* v. *Luther*, 21 Barb. 147 ; *Drury* v. *Newman*, 99 Mass. 256 ; *Sibbald* v. *The Bethlehem Iron Co. supra*; *Cook* v. *Welch*, 9 Allen, 350 ; *Veazie* v. *Parker*, 72 Maine, 443 ; *Rockwell* v. *Newton*, 44 Conn. 337.

Of course there may be contracts between the broker and his employer, by the terms of which the broker may become entitled to his commissions even though a bargain or sale may not be effected. In such cases the terms of the contract must govern, as in *Chapin* v. *Bridges*, 116 Mass. 105, and *Rice* v. *Mayo*, 107 Mass. 550. But in the present case there was no contract other than for a sale of the property. The sale was not effected between the parties owing to a misunderstanding or disagreement in reference to the form of conveyance. It was not an act of capriciousness on the part of the defendant such as to render him liable to the brokers for their commissions, as in *Kock* v. *Emmerling*, 22 How. (U. S.) 69, 73.

*Exceptions sustained.*

PETERS, C. J., WALTON, VIRGIN, EMERY, and HASKELL, JJ., concurred.